# Exhibits

| No. of Exhibit | Description |
| --- | --- |
| 1 | Adjustable Rate Note 1/20/2006 |
| 2 | Assignment of Deed of Trust 9/01/2009 |
| 3 | Letter requesting Reconveyance 3/17/2010 |
| 4 | Notice of Default 3/31/2010 |
| 5 | Qualified Written Request 4/30/2010 |
| 6 | Notice of Trustee's Sale 7/1/2010 |

# EXHIBIT 1

# ADJUSTABLE RATE NOTE
## (12-MTA Index - Payment and Rate Caps)

3013137207

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. MY MONTHLY PAYMENT INCREASES WILL HAVE LIMITS WHICH COULD RESULT IN THE PRINCIPAL AMOUNT I MUST REPAY BEING LARGER THAN THE AMOUNT I ORIGINALLY BORROWED, BUT NOT MORE THAN __110%__ OF THE ORIGINAL AMOUNT (OR $____2,750,000.00__). MY INTEREST RATE CAN NEVER EXCEED THE LIMIT STATED IN THIS NOTE OR ANY RIDER TO THIS NOTE. A BALLOON PAYMENT MAY BE DUE AT MATURITY.

__DECEMBER 20, 2006__          __WESTLAKE VILLAGE__          , __CALIFORNIA__
                                          CITY                                    STATE

__845 SEA RANCH DRIVE, SANTA BARBARA, CA  93109__
                        PROPERTY ADDRESS

## 1. BORROWER'S PROMISE TO PAY

( In return for a loan that I have received,) I promise to pay U.S. $ ____2,500,000.00____ plus any amounts added in accordance with Section 4 (G) below, (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is __WASHINGTON MUTUAL BANK, FA__ . I will make all payments under this Note in form of cash, check or money order. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder".

## 2. INTEREST

Interest will be charged on unpaid Principal until the full amount has been paid. Up until the first day of the calendar month that immediately precedes the first payment due date set forth in Section 3 of this Note, I will pay interest at a yearly rate of __7.233__%. Thereafter until the first Change Date (as defined in Section 4 of this Note) I will pay interest at a yearly rate of __1.100__%. The interest rate required by this Section 2 and Section 4 of this Note is the Rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay Principal and interest by making payments every month. In this Note, "payments" refer to Principal and interest payments only, although other charges such as taxes, insurance and/or late charges may also be payable with the monthly payment.

I will make my monthly payments on __1ST__ day of each month beginning on __FEBRUARY, 2007__ , I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied to interest before Principal. If, on __JANUARY 01, 2047__ , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date".

I will make my monthly payments at __P.O. BOX 78148 PHOENIX, AZ 85062-8148__
_____ , or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my monthly payments until the first Payment Change Date will be in the amount of U.S. $ __6,440.28__ , unless adjusted at an earlier time under Section 4(H) of this Note.

ALLIANCE TITLE COMPANY hereby certifies this is a true and correct copy of the original. LNT60USA (VERSION 1.0)
Authorized Signature

**(C) Payment Changes**

My monthly payment will be recomputed, according to Sections 4(E)(F)(G)(H) and (I) of this Note, to reflect changes in the Principal balance and interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The interest rate I will pay may further change on the ___1ST___ day of __FEBRUARY , 2007_____, and on that day every month thereafter. Each such day is called a "Change Date".

**(B) The Index**

On each Change Date, my interest rate will be based on an Index. The "Index" is the Twelve-Month Average, determined as set forth below, of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve-Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12.

The most recent Index figure available as of 15 days before each interest rate Change Date is called the "Current Index". If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding __TWO AND  35 / 100_____ percentage points __2.350__ % ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-thousandth of one percentage point (0.001%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. In the event a new Index is selected, pursuant to paragraph 4(B), a new Margin will be determined. The new Margin will be the difference between the average of the old Index for the most recent three year period which ends on the last date the Index was available plus the Margin on the last date the old Index was available and the average of the new Index for the most recent three year period which ends on that date (or if not available for such three year period, for such time as it is available). This difference will be rounded to the next higher 1/8 of 1%.

**(D) Interest Rate Limit**

My interest rate will never be greater than __NINE AND 70 / 100_____ percentage points __9.700__ % ("Cap"), except that following any sale or transfer of the property which secures repayment of this Note after the first interest rate Change Date, the maximum interest rate will be the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of such sale or transfer.

**(E) Payment Change Dates**

Effective every year commencing __FEBRUARY 01, 2008_____, and on the same date each twelfth month thereafter ("Payment Change Date"), the Note Holder will determine the amount of the monthly payment that would be sufficient to repay the projected principal balance I am expected to owe as of the Payment Change Date in full on the Maturity Date at the interest rate in effect 45 days prior to the Payment Change Date in substantially equal payments. The result of this calculation is the new amount of my monthly payment, subject to Section 4(F) below, and I will make payments in the new amount until the next Payment Change Date unless my payments are changed earlier under Section 4(H) of this Note.

**(F) Monthly Payment Limitations**

Unless Section 4(H) and 4(I) below apply, the amount of my new monthly payment, beginning with a Payment Change Date, will be limited to 7 1/2% more or less than the amount I have been paying. This payment cap applies only to the principal payment and does not apply to any escrow payments Lender may require under the Security Instrument.

32859 (11-01)  Page 2 of 6

ALLIANCE TITLE ... LNT60USB (VERSION 1.0)

Exhibit 1  Page 2 of 8

3013137207

**(G) Changes in My Unpaid Principal Due to Negative Amortization or Accelerated Amortization**

Since my payment amount changes less frequently than the interest rate and since the monthly payment is subject to the payment limitations described in Section 4(F), my monthly payment could be less or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the maturity date in substantially equal payments. For each month that the monthly payment is less than the interest portion, the Note Holder will subtract the monthly payment from the amount of the interest portion and will ad the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the current interest rate. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the excess towards a principal reduction of the Note.

**(H) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid principal can never exceed a maximum amount equal to __110%__ of the principal amount original borrowed. In the event my unpaid Principal would otherwise exceed that __110%__ limitation, I will begin paying a new monthly payment until the next Payment Change Date notwithstanding the 7 1/2% annual payment increase limitation. The new monthly payment will be an amount which would be sufficient to repay my then unpaid Principal in full on the maturity date at my interest rate in effect the month prior to the payment due date in substantially equal payments.

**(I) Required Full Monthly Payment**

On the __FIFTH__ anniversary of the due date of the first monthly payment, and on that same day every __FIFTH__ year thereafter, the monthly payment will be adjusted without regard to the payment cap limitation in Section 4(F).

**(J) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(K) Failure to Make Adjustments**

If for any reason Note Holder fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Note Holder may, upon discovery of such failure, then make the adjustment as if they had been made on time. I also agree not to hold Note Holder responsible for any damages to me which may result from Note Holder's failure to make the adjustment and to let the Note Holder, at its option, apply any excess monies which I may have paid to partial Prepayment of unpaid Principal.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment". When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will apply all of my prepayments to reduce the amount of principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the principal amount of the Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may have the effect of reducing the amount of my monthly payments, but only after the first Payment Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

32859 (11-01)                    Page 3 of 6

ALLIANCE TITLE COMPANY
hereby certifies this is a true
and correct copy of the original.
LNT60USC (VERSION 1.0)

Authorized Signature

**Exhibit 1    Page 3 of 8**

3 0 1 3 1 3 7 2 0 7

### 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then; (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**Miscellaneous Fees:** I understand that the Note Holder will also charge a return item charge in the event a payment that I make in connection with repayment of this loan is not honored by the financial institution on which it is drawn. The current fee is $ _15 .00_____. Lender reserves the right to change the fee from time to time without notice except as may be required by law.

### 7. BORROWER'S FAILURE TO PAY AS REQUIRED

#### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of _F I F T E E N___ calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be ___5 . 0 0 0__% of my overdue payment of Principal and interest. I will pay this late charge promptly but only once of each late payment.

#### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

#### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 10 days after the date on which the notice is delivered or mailed to me (or, if the Federal National Mortgage Association or the Federal Home Loan Mortgage Corporation buys all or part of Lender's rights under the Security Instrument, in which case the notice will specify a date, not less than 30 days from the date the notice is given the Borrower).

#### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

#### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note, whether or not a lawsuit is brought, to the extent not prohibited by Applicable Law. Those expenses include, for example, reasonable attorneys' fees.

### 8. GIVING OF NOTICES

Unless Applicable Law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

### 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

ALLIANCE TITLE COMPANY
hereby certifies this is a true
and correct copy of the CLNT60USD (VERSION 1.0)

Authorized Signature

Exhibit 1   Page 4 of 6

3013137207

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

### Transfer of the Property or a Beneficial Interest in Borrower.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) the request to assume is made after one year following recordation of the Deed of Trust, (b) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (c) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument or other obligations related to the Note or other loan document is acceptable to Lender, (d) Assuming party executes Assumption Agreement acceptable to Lender at its sole choice and discretion, which Agreement may include an increase to Cap as set forth below and (e) payment of Assumption Fee if requested by Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption and Lender may increase the maximum rate limit to the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of the transfer. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender has entered into a written Assumption Agreement with transferee and formally releases Borrower.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 12. MISCELLANEOUS PROVISIONS

In the event the Note Holder at any time discovers that this Note or the Security Instrument or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical or ministerial mistake, calculation error, computer error, printing error or similar error (collectively "Errors"), I agree, upon notice from the Note Holder, to reexecute any Loan Documents that are necessary to correct any such Errors and I also agree that I will not hold the Note Holder responsible for any damage to me which may result from any such Errors.

If any of the Loan Documents are lost, stolen, mutilated or destroyed and the Note Holder delivers to me an indemnification in my favor, signed by the Note Holder, then I will sign and deliver to the Note Holder a Loan Document identical in form and content which will have the effect of the original for all purposes.

32859 (11-01)

Page 5 of 6 Borrower certifies this is a true and correct copy of the original

Page 5 of 6 BORROWER (VERSION 1.0)

ALLIANCE TITLE COMPANY

Authorized Signature

**Exhibit 1     Page 5 of 8**

3013137207

WITNESS THE HAND (S) AND SEAL (S) OF THE UNDERSIGNED.

MARGARET CARSWELL

ALLIANCE TITLE COMPANY
hereby certifies this is a true
and correct copy of the original.

Authorized Signature

32859 (11-01)          Page 6 of 6          LNT60USF (VERSION 1.0)

Exhibit 1     Page 6 of 8

WP 1Y
M39

# Prepayment Fee Note Addendum
3013137207-868

This Note Addendum is made this **20TH** day of **DECEMBER, 2006** and is incorporated into and shall be deemed to amend and supplement the Note made by the undersigned (the "Borrower") in favor of **WASHINGTON MUTUAL BANK, FA** (the "Lender") and dated as of even date herewith (the "Note").

This Note Addendum amends the provision in the Note regarding the Borrower's right to prepay as follows:

BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal before they are due. Any payment of principal, before it is due, is known as a "prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment." A prepayment of the full amount of the unpaid principal is known as a "full prepayment."

If I make a full prepayment, I may be charged a fee as follows:

If Noteholder receives a prepayment on or before the first anniversary of the date of the Note, the Prepayment Fee shall be equal to **TWO** percent ( **2.000** %) of the original loan amount. Thereafter, prepayment of the Note shall be permitted without any Prepayment Fee.

The Prepayment Fee shall be payable upon a full prepayment, voluntary or involuntary, including but not limited to a prepayment resulting from Noteholder's permitted acceleration of the balance due on the Note. Notwithstanding the foregoing, nothing herein shall restrict my right to prepay at any time without penalty accrued but unpaid interest that has been added to principal.

When I make a full or partial prepayment I will notify the Noteholder in writing that I am doing so. Any partial prepayment of principal shall be applied to interest accrued on the amount prepaid and then to the principal balance of the Note which shall not reduce the amount of monthly installments of principal and interest (until reamortized as set forth in the Note at the next Payment Change Date) nor relieve me of the obligation to make the installments each and every month until the Note is paid in full. Partial prepayments shall have no effect upon the due dates or the amounts of my monthly payments unless the Noteholder agrees in writing to such changes.

ALLIANCE TITLE COMPANY
hereby certifies this to be a true and
correct copy of the original.
Page 1 of 2

4367 (08-01) VERSION 1.0 (09/29/03)

LRI36USA

Exhibit 1   Page 7 of 8

**NOTICE TO THE BORROWER**
Do not sign this Note Addendum before you read it. This Note Addendum provides for the payment of a Prepayment Fee if you wish to repay the loan prior to the date provided for repayment in the Note.

By signing below, Borrower accepts and agrees to the terms and covenants contained in this Note Addendum.

_____          _____
MARGARET CARSWELL

_____          _____

ALLIANCE TITLE COMPANY
hereby certifies this is a true
and correct copy of the original.
Authorized Signature

Exhibit 1   Page 8 of 58

# EXHIBIT 2

requested by title court

RECORDING REQUESTED BY

CALIFORNIA RECONVEYANCE COMPANY

AND WHEN RECORDED MAIL TO

CALIFORNIA RECONVEYANCE COMPANY
9200 Oakdale Avenue
Mail Stop: CA2-4379
Chatsworth, CA 91311

2009-0053988

| Recorded | REC FEE | 14.00 |
| Official Records | | |
| County of | | |
| Santa Barbara | | |
| Joseph E. Holland | | |

08:01AM 02-Sep-2009  |  ML
                        Page 1 of 2

Space above this line for recorder's use only

Trustee Sale No. 438472CA    Loan No. 3013137207    Title Order No. 198071

## IMPORTANT NOTICE

NOTE: After having been recorded, this Assignment should be kept with the
Note and the Deed of Trust hereby assigned.

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to Bank of America, National Association as successor by merger to "LaSalle Bank NA as trustee forWaMu Mortgage Pass-Through Certificates Series 2007-OA1 Trust" all beneficial interest under that certain Deed of Trust dated 12/20/2006, executed by MARGARET CARSWELL, AN UNMARRIED WOMAN, as Trustor; to CALIFORNIA RECONVEYANCE COMPANY as Trustee; and Recorded 12/28/2006, Book , Page , Instrument 2006-0100995 of official records in the Office of the County Recorder of SANTA BARBARA County, California. APN: 047-103-04-00 Situs: 845 SEA RANCH DRIVE, , SANTA BARBARA, CA 93109

TOGETHER with the note or notes therein described and secured thereby, the money due and to become due thereon, with interest, and all rights accrued or to accrue under said Deed of Trust including the right to have reconveyed, in whole or in part, the real property described therein.

DATE: September 01, 2009

JPMorgan Chase Bank, National Association, successor in interest to WASHINGTON MUTUAL BANK, FA

Deborah Brignac, Vice President

FA_MERGE.DOC

1

Exhibit 2    Page 1 of 2

Trustee Sale No. 438472CA Loan No. 3013137207 Title Order No. 198071

STATE OF CALIFORNIA
COUNTY OF LOS ANGELES

On September 01, 2009 before me, JESSICA ERIN SNEDDEN, "Notary Public", personally appeared
Deborah Brignac, who proved to me on the basis of satisfactory evidence to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on
the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the
instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)



JESSICA ERIN SNEDDEN
COMM. # 1858851
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
MY COMM. EXP. JULY 24, 2013

FA_MERGE.DOC

2

Exhibit 2    Page 2 of 2

# EXHIBIT 3

Margaret Carswell
845 Sea Ranch Drive
Santa Barbara CA 93109
March 17, 2010

California Reconveyance Company
Huey-Jen Chiu, Vice President
9200 Oakdale Avenue - CA2-4379
Chatsworth, CA 91311

Dear Huey-Jen Chiu;

California Reconveyance  Company has been acting as Trustee under the Deed of Trust dated December 28th 2006 between myself as Trustor and Washington Mutual Bank as beneficiary. The role of trustee is a non-partisan, neutral position equally responsive to both interested parties.

In this particular case, it has come to my attention that all sums secured by the above-mentioned Deed of Trust were fully paid to Washington Mutual bank early in 2007, months before WaMu went into bankruptcy in September 2008. Today Washington Mutual bank no longer exists and therefore cannot instruct you to reconvey the Deed of Trust.

As the other interested party to this transaction, I am hereby requesting that you have notarized and file with the Recorder of Santa Barbara County as soon as possible a Full Reconveyance, two copies of which document have been enclosed herewith as a convenience to you.

I thank you for your cooperation and prompt action.

Sincerely,

Margaret Carswell

Cc: Santa Barbara County Clerk-Recorder Joseph Holland

**Exhibit 3   Page 1 of 2**

Recording requested by:
When recorded return to
Margaret Carswell
845 Sea Ranch Drive
Santa Barbara, CA 93109

## Full Reconveyance

California Reconveyance Company as Trustee for the Deed of Trust herein-after referred to, having received a written request to reconvey, reciting that all sums secured by said Deed of Trust have been fully paid to Washington Mutual Bank, FA as beneficiary under said Deed of Trust, does hereby reconvey to the person or persons legally entitled thereto, without warranty, all the estate, title and interest acquired by the Trustee under said Deed of Trust.

Said Deed of Trust was executed by:

Margaret Carswell, an unmarried woman,

Trustor, and recorded in the official records of Santa Barbara County, California, at

Docket/Recorders Number 2006-0100995 on the 28th day of December, 2006.

In Witness Whereof, California Reconveyance Company as the Trustee has caused its corporate name to be affixed by a duly authorized officer on the date shown in the acknowledgment certificate below:

Dated:                                          Signed: _____

State of California

County of _____

On March __, 2010, before me, _____ ,a Notary Public, personally
appeared _____, who proved to me on the basis of satisfactory evidence to
be the person whose name is  subscribed to the within instrument and acknowledged to me that
s/he executed the same in his/her authorized capacity, and that by his/her signature on the
instrument, the person, or the entity upon behalf of which the person acted, executed the
instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____

Exhibit 3    Page 2 of 2

# EXHIBIT 4

**RECORDING REQUESTED BY**
**CALIFORNIA RECONVEYANCE COMPANY**

**AND WHEN RECORDED MAIL TO**

**CALIFORNIA RECONVEYANCE COMPANY**
9200 Oakdale Avenue
Mail Stop: CA2-4379
Chatsworth, CA 91311
800 892-6902
(818)775-2258 (Fax)

4/1/10 doc# 2010-16470

_____
Space above this line for recorder's use only

Trustee Sale No. 242186CA   Loan No. 3013137207   Title Order No. 411063

# IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION, and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice).**

**This amount is $34,747.45 as of March 30, 2010 and will increase until your account becomes current.**

**While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.**

**Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the end of the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).**

**Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of property by paying the entire amount demanded by your creditor.**



Exhibit 4   Page 1 of 3

__Trustee Sale No. 242186CA__   Loan No. 3013137207   Title Order No. 411063

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact: JPMorgan Chase Bank, National Association, at 7301 BAYMEADOWS WAY , JACKSONVILLE, FL 32256, 800-848-9380.

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.  Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.  NOTICE IS HEREBY GIVEN THAT: CALIFORNIA RECONVEYANCE COMPANY is the duly appointed Trustee under a Deed of Trust dated 12-20-2006, executed by MARGARET CARSWELL, AN UNMARRIED WOMAN, as trustor, to secure obligations in favor of WASHINGTON MUTUAL BANK, FA, as Beneficiary Recorded 12-28-2006, Book , Page , Instrument 2006-0100995 of official records in the Office of the Recorder of SANTA BARBARA County, California, as more fully described on said Deed of Trust. APN: 047-103-04-00 Situs: 845  SEA RANCH DRIVE, , SANTA BARBARA, CA 93109 Including the note(s) for the sum of $2,500,000.00 that the beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the beneficiary; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of: THE 12/01/2009 INSTALLMENT OF PRINCIPAL AND INTEREST AND ALL SUBSEQUENT MONTHLY INSTALLMENTS OF PRINCIPAL AND INTEREST; PLUS ANY ADDITIONAL ACCRUED AND UNPAID AMOUNTS INCLUDING, BUT NOT LIMITED TO, LATE CHARGES, ADVANCES, IMPOUNDS, TAXES, HAZARD INSURANCE, ADMINISTRATIVE FEES, INSUFFICIENT AND PARTIAL RETURN CHECK FEES, STATEMENT FEES, AND OBLIGATIONS SECURED BY PRIOR ENCUMBRANCES.

That by reason thereof, the present beneficiary under such Deed of Trust, has executed and delivered to said Trustee, a written Declaration and Demand for Sale, and has deposited with said duly appointed Trustee, such Deed of Trust and all documents evidencing the obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

SEE ATTACHED DECLARATION

DATE: March 30, 2010

CALIFORNIA RECONVEYANCE COMPANY, as Trustee

ELENA MARTINEZ, Assistant Secretary

CALIFORNIA RECONVEYANCE COMPANY IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

Exhibit 4   Page 2 of 3

Borrowers:        **MARGARET CARSWELL**

Property Address:    **845 SEA RANCH DR., SANTA BARBARA CA 93109**

Loan Number:      **3013137207**

# DECLARATION OF COMPLIANCE

*(California Civil Code Section 2923.5(b))*

The undersigned mortgagee, beneficiary or authorized agent hereby declares under penalty of perjury, under the laws of the State of California, as follows:

☐    The mortgagee, beneficiary or authorized agent has contacted the borrower to discuss the borrower s financial situation and to explore options for the borrower to avoid foreclosure in compliance with Cal. Civ. Code Section 2923.5. Thirty days or more have elapsed since the borrower was contacted.

☒    The mortgagee, beneficiary or authorized agent tried with due diligence but was unable to contact the borrower to discuss the borrower s financial situation and to explore options for the borrower to avoid foreclosure as required by Cal. Civ. Code Section 2923.5. Thirty days or more have elapsed since these due diligence efforts were completed.

☐    The mortgagee, beneficiary or authorized agent was not required to comply with Cal. Civ. Code Section 2923.5 because:

  ☐    The real property is not an owner-occupied single family residence.

  ☐    The loan was not originated between January 1, 2003 and December 31, 2007.

  ☐    The borrower has surrendered the property as evidenced by either a letter confirming the surrender or delivery of the keys to the property to the mortgagee, trustee, beneficiary or authorized agent.

  ☐    The borrower has contracted with someone whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and avoid their loan obligations.

  ☐    The borrower has filed for bankruptcy, and the proceedings have not yet been finalized.

I certify under penalty of perjury under the laws of the State of California that the above is true and correct.

                    **JP Morgan Chase Bank, National Association**

Date:    03/26/10                *Clement J. Durkin*
City/State: Jacksonville, Florida      Clement J. Durkin



**Exhibit 4    Page 3 of 3**

EXHIBIT 5

Margaret Carswell
845 Sea Ranch Drive
Santa Barbara CA 93109
April 30, 2010

California Reconveyance Company
9200 Oakdale Avenue - CA2-4379
Chatsworth CA 91311

Washington Mutual Bank
3415 Vision Drive
Columbus Ohio 43219

Washington Mutual Bank
2273 N. Green Valley Parkway, suite 14
Henderson NV 89014

RE: WaMu loan account number 3013137207

This is a "Qualified Written Request" under § 6 of the Real Estate Settlement Procedures Act.

I am writing to request clarification of various sales, transfers, funding sources, legal and
beneficial ownership, charges, credits, debits, transactions, reversals, actions, payments, analyses
and records related to the creation and management of this account.

To date, the documents and information I have, that you have sent me, and the conversations
with your service representatives have not fully answered my questions.

Since I am facing imminent foreclosure, your full, specific, and complete compliance is of utmost
importance.

1. Please provide a copy of the Final Loan Application, including notations by underwriters.

2. Please supply the contract, duly signed by an officer of the corporation, which committed
WaMu to lend funds to me.

3. Please provide a ledger statement of WaMu showing: (a) the account and the source of the
funds loaned to me, and (b) entry in WaMu's books of the Note as an asset or cash item.

4. To whom was payment issued for the proceeds of this mortgage loan? Please provide copies
of the front and back of each cancelled check.

5. An industry practice in the relevant years was to bundle individual mortgage loans into

**Exhibit 5    Page 1 of 4**

Collateralized Debt Obligations, which were sold to securities investors. Please account for revenues received by you in this manner in connection with my loan.

6. Please provide the Mortgage Loan Schedule, which is Exhibit D to the Pooling and Servicing Agreement dated as of January 1, 2007, providing for the issuance of WaMu Mortgage Pass-Through Certificates, Series 2007-OA1 Trust.

7. Please account for revenues received from any credit default insurance relating to this loan.

8. Please disclose the identity and contact information of the current Owner of the Note.

9. Please disclose the identity and contact information of the current Holder of the Note.

10. Please disclose the identity of every previous Owner and Holder of the Note.

11. Please disclose the identity of the current trustee of the Deed of Trust.

12. Please disclose the identity of every previous trustee of the Deed of Trust.

13. Has the current Owner or Holder of the Note filed for bankruptcy?

14. Has any previous Owner or Holder of the Note filed for bankruptcy?

15. Was the Note transferred or assigned by any Owner or Holder after its bankruptcy filing date? If so, please describe.

16. Please identify the name and address of the custodian of the originals of this entire account file.

17. Please provide an authenticated copy of the front and the back sides of the original Promissory Note showing a complete chronological chain of all endorsements and assignments.

18. Since the inception of this account, has there been any assignment of the Note to any other party? If the answer is yes, identify the names and addresses of each and every individual or entity that has received such assignments.

19. Since the inception of this account, has there been any assignment of the Deed of Trust to any other party? If the answer is yes, identify the names and addresses of each and every individual or entity that has received such assignments.

20. Since the inception of this account, has there been any sale or assignment of the servicing rights to this mortgage account to any other party? If the answer is yes, identify the names and addresses of each and every individual or entity that has received such servicing rights.

Exhibit 5    Page 2 of 4

21. Since the inception of this account, have any sub-servicers serviced any portion of this mortgage account? If the answer is yes, identify the names and addresses of each and every individual or entity that has sub-serviced this mortgage account.

22. Has this mortgage account been a part of any mortgage pool since the inception of the loan? If yes, please identify each and every account mortgage pool that this mortgage has been a part of.

23. Has every assignment of the Note been recorded in the Santa Barbara County Recorders Office?

24. Has there been any assignment of this mortgage to MERS (Mortgage Electronic Registration System) or any other mortgage registry service? If yes, identify the name and address of each and every individual or entity that has been assigned mortgage servicing rights.

25. Have any investors participated in any mortgage-backed security, collateralized debt obligation or other mortgage security instrument that this mortgage account has ever been a part of? If yes, identify the name and address of each investor.

26. Please identify the parties and their addresses to all sales contracts, servicing agreements, assignments, alonges, transfers, indemnification agreements, recourse agreements and any agreement related to this account from the inception of this account to the present date.

27. Please attach copies of all sales contracts, servicing agreements, assignments, alonges, transfers, indemnification agreements, recourse agreements and any agreement related to this account from the inception of this account to the present date.

28. How much was paid for this individual mortgage account by you?

29. If part of a mortgage pool, what was the principal balance used by you to determine payment for this individual mortgage loan?

30. If part of a mortgage pool, what was the percentage paid by you of the principal balance above used to determine purchase of this individual mortgage loan?

31. Did any investor approve of the foreclosure of my property?

32. Has HUD assigned or transferred foreclosure rights to you pursuant to 12 USC 3754?

33. Please identify all persons who authorized or approved the foreclosure of my property.

34. Please provide the CUSIP # for this loan account.

35. What is the legal relationship between California Reconveyance Company and the family of companies doing business as JPMorgan Chase?

**Exhibit 5    Page 3 of 4**

Finally, I am requesting that any attempt to exercise the power of sale of this property be voluntarily stayed until there is full compliance with the obligations imposed by this QWR.

Thank you for your prompt consideration of this matter.

Yours sincerely,

Margaret Carswell

**CHASE ○**

**Chase Home Finance LLC**
800 State Highway 121 Bypass
Lewisville, TX  75067

May 6, 2010

Margaret Carswell
845 Sea Ranch Drive
Santa Barbara, CA 93109

Re:     Loan Number:          ******7207

To Whom It May Concern:

We are writing in response to your correspondence regarding the Qualified Written Request (QWR) for the above-mentioned mortgage.  Your letter was forwarded to our office on May 6, 2010, for review.

We are investigating your issues and will work to provide you with a complete and accurate response.  Chase appreciates your patience in this matter.

Chase's goal is to provide the highest level of quality service.  In the interim period, you may contact our Customer Care unit at 1-866-926-8937.

Sincerely,


Home Lending Executive Office/cpa

**Exhibit 5    Page 4 of 4**

# EXHIBIT 6

RECORDING REQUESTED BY
CALIFORNIA RECONVEYANCE COMPANY

AND WHEN RECORDED MAIL TO

CALIFORNIA RECONVEYANCE COMPANY
9200 Oakdale Avenue
Mail Stop: N110612
Chatsworth, CA 91311
800-892-6902

**Trustee Sale No.** **242186CA**
Loan No.                3013137207
Title Order No.         411063

Space above this line for recorder's use only

## NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 12-20-2006. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

On 07-22-2010 at 01:00 PM, CALIFORNIA RECONVEYANCE COMPANY as the duly appointed Trustee under and pursuant to Deed of Trust Recorded 12-28-2006, Book , Page , Instrument 2006-0100995,        of official records in the Office of the Recorder of SANTA BARBARA County, California, executed by: MARGARET CARSWELL, AN UNMARRIED WOMAN, as Trustor, WASHINGTON MUTUAL BANK, FA, as Beneficiary, will sell at public auction sale to the highest bidder for cash, cashier's check drawn by a state or national bank, a cashier's check drawn by a state or federal credit union, or a cashier's check drawn by a state or federal savings and loan association, savings association, or savings bank specified in section 5102 of the Financial Code and authorized to do business in this state. Sale will be held by the duly appointed trustee as shown below, of all right, title, and interest conveyed to and now held by the trustee in the hereinafter described property under and pursuant to the Deed of Trust. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, interest thereon, estimated fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below. The amount may be greater on the day of sale.

Place of Sale: AT THE MAIN ENTRANCE TO THE COUNTY COURTHOUSE, 1100 ANACAPA STREET , SANTA BARBARA, CA

Legal Description: LOT 44 OF CAMPANIL HILLS, UNIT NO. TWO, IN THE CITY OF SANTA BARBARA, COUNTY OF SANTA BARBARA, STATE OF CALIFORNIA, AS SHOWN ON MAP FILED IN BOOK 74 PAGES 17, 18 AND 19 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

Amount of unpaid balance and other charges: $2,734,584.06(estimated)

Street address and other common designation of the real property:     845  SEA RANCH DRIVE
                                                                    SANTA BARBARA, CA 93109
                                                                    APN Number:   047-103-04-00

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. The property heretofore described is being sold "as is".

In compliance with California Civil Code 2923.5(c) the mortgagee, trustee, beneficiary, or authorized agent declares: that it has contacted the borrower(s) to assess their financial situation and to explore options to avoid foreclosure; or that it has made efforts to contact the borrower(s) to assess their financial situation and to explore options to avoid foreclosure by one of the following methods: by telephone; by United States mail; either 1st class or certified; by overnight delivery; by personal delivery; by e-mail; by face to face meeting.

DATE: 07-01-2010                                    **SEE ATTACHED EXHIBIT**

**Exhibit 6    Page 1 of 3**

CALIFORNIA RECONVEYANCE COMPANY, as Trustee
(714) 259-7850 or www.fidelityasap.com
(714) 573-1965 or www.priorityposting.com

*Deborah Brignac*

CALIFORNIA RECONVEYANCE COMPANY IS A DEBT COLLECTOR
ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL
BE USED FOR THAT PURPOSE.
DEBORAH BRIGNAC, VICE PRESIDENT
9200 OAKDALE AVE
MAILSTOP N110612
CHATSWORTH, CA 91311

**Exhibit 6   Page 2 of 3**

## NOTICE OF SALE
### PURSUANT TO SECTION 2924.8 OF THE CIVIL CODE

Foreclosure process has begun on this property, which may affect your right to continue to live in this property. Twenty days or more after the date of this notice, this property may be sold at foreclosure. If you are renting this property, the new property owner may either give you a new lease or rental agreement or provide you with a 60-day eviction notice. However, other laws may prohibit an eviction in this circumstance or provide you with a longer notice before eviction. You may wish to contact a lawyer or your local legal aid or housing counseling agency to discuss any rights you may have.

出售公告
依据民法典第2924.8章

因本房产的赎进程序已经开始，这可能会影响您在此继续居住的权利。从本通知起的二十天后，本房产可能会被出售。如果你是租房户、新的房主可能给你新的出租协议，或通知您在60天内搬家。但有些法律可能禁止在此情况下的清房，或可为您提供更长的搬家期限。您可以与您的律师，您当地的法律援助或房屋咨询机构讨论您的有关权利。

매매 통고
민법 제 2924.8 항에 의거

이 건물에 대한 차압 절차가 시작되었으며, 그로 인해 귀하가 이 건물에서 계속해서 거주할 수 있는 권리에도 영향이 미칠 수 있습니다. 이 통고문의 날짜로부터 20일 혹은 그 후에, 이 건물은 차압 매매될 수 있습니다. 만약 귀하가 이 건물을 임차하고 있다면, 새로운 건물 소유주는 귀하와 새임대차 계약을 하거나 또는 60일 이내 퇴거하라는 통고를 할 수 있습니다. 그러나, 다른 법률들은 이런 상황에서의 퇴거를 금지하거나 또는 귀하에게 퇴거하기 전까지 연장된 기간의 통고를 하도록 할 수도 있습니다. 귀하의 권리에 대한 상담을 하기 위해 귀하는 변호사 또는 귀하가 있는 지역의 법률 구호 기관 혹은 주택 상담 기관에 연락할 수도 있습니다.

## ANUNCIO DE VENTA
### SEGÚN LA SECCIÓN 2924.8 DEL CÓDIGO CIVIL

El proceso de ejecución de hipoteca ha comenzado en esta propiedad, lo que puede afectar su derecho de vivir en esta propiedad. La propiedad puede ser vendida en ejecución de hipoteca veinte días o más después de la fecha de este aviso. Si usted está rentando esta propiedad, el nuevo dueño de la propiedad puede darle a usted un nuevo contrato de arrendamiento o alquiler o darle un aviso de desalojo de 60-días. Sin embargo, otras leyes tal vez puedan prohibir un desalojo en esta circunstancia o proveerle a usted un aviso de desalojo de más tiempo para que desaloje la propiedad. Tal vez usted desee comunicarse con un abogado o su ayuda legal de la localidad o agencia de consejería de vivienda para hablar de cualquier derecho que usted tal vez tenga.

## PAUNAWA SA PAGBENTA
### BATAY SA SEKSYON 2924.8 NG NILAGDAANG SIBIL

Ang proseso ng pagreremata ay nagsimula na sa pag-aaring ito, na kung saan ay maaaring makaapekto sa inyong karapatan na tuluyang manirahan sa pag-aaring nabanggit. Dalawampung araw o higit pa matapos ang petsang naisagawa ang paunawang ito, ang nasabing pag-aari ay maaari nang ibenta batay sa pagremata. Kung kayo ay nangungupahan sa pag-aaring ito, ang bagong may-ari ay maaaring magbigay ng bagong kasunduan sa paghiram o pagbenta o bigyan kayo ng kasulatan na paunawa na makalipat sa loob ng 60 na araw. Gayunpaman, maaaring ipagbawal ng ibang batas ang pagpapaalis sa pagkakataong ito o maaaring bigyan kayo ng mas mahabang panahon bago ang pagpapaalis. Minumungkahi kayong makipagbigay alam sa inyong abogado o lokal na katulong pang-legal o ahensiya ng payong pabahay upang pag-usapan ang alinmang karapatan na kayo ay mayroon.

## THÔNG BÁO BÁN
### THEO ĐIỀU 2924.8 BỘ LUẬT DÂN SỰ

Việc bắt đầu tịch thu tài sản này có thể ảnh hưởng đến quyền tiếp tục sinh sống của bạn tại đây. Bắt đầu từ hai mươi ngày trở đi sau thông báo, tài sản này có thể bị tịch thu để trả nợ. Nếu bạn đang mướn nhà tại đây, chủ tài sản mới sẽ gửi cho bạn cam kết mới về việc thuê hoặc mướn  hoặc có thể sẽ gửi cho bạn thông báo rời khỏi nhà trong vòng 60 ngày. Tuy nhiên, một số luật khác có thể không cho phép việc yêu cầu rời khỏi nhà trong trường hợp này mà gửi cho bạn thông báo sớm hơn trước khi yêu cầu bạn rời đi. Bạn nên liên hệ với luật sư hoặc tổ chức giúp đỡ luật địa phương hoặc cơ sở tư vấn nhà để tham khảo những quyền bạn có.

**Exhibit 6   Page 3 of 3**