1  DOUGLAS GILLIES, ESQ.  (CA Bar No. 53602)
2  douglasgillies@gmail.com
   3756 Torino Drive
3  Santa Barbara, CA 93105
4  (805) 682-7033

5  Attorney for Plaintiff
6  MARGARET CARSWELL

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARGARET CARSWELL, | ) Case No. CV 10-5152-GW (PLAx) |
| Plaintiff, | ) |
| v. | ) JUDGE:  HON. GEORGE H. WU |
| JP MORGAN CHASE BANK N.A., CALIFORNIA RECONVEYANCE CO., and DOES 1-150, inclusive, | ) PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS |
| Defendants. | ) DATE: September 30, 2010 |
| | ) TIME: 8:30 AM |
| | ) CRTRM: 10 |

1
2
## **TABLE OF CONTENTS**

3
4
1.  INTRODUCTION                                                                    1

2.  STATEMENT OF FACTS                                                              1

3.  THE MATERIAL ALLEGATIONS IN THE COMPLAINT ARE SUFFICIENT   2

4.  NO CONTRACT WAS FORMED BETWEEN PLAINTIFF AND WAMU         2

5.  INTENDING THAT THE OTHER PARTY WILL FAIL VOIDS A CONTRACT  5

6.  FEDERAL COURT IS THE PROPER FORUM FOR THIS CONTROVERSY     9

7.  DEFENDANTS' RESPA VIOLATIONS CONCEAL MATERIAL FACTS        10

8.  DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IS PREMATURE       10

9.  QUIET TITLE DOES NOT REQUIRE FULL TENDER TO TRESPASSERS    12

10. CRC CANNOT BE REPRESENTED BY ONE OF ITS TWO PRINCIPALS     14

11. PLAINTIFF REQUESTS A TRO AND PRELIMINARY INJUNCTION        15

12. CONCLUSION                                                 15

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Cases**

*Autry v. Republic Productions, Inc.,* 30 Cal.2d 144, 151, 152 (1947)..................8

*Autry v. Republic Productions, Inc.*, id, 151, 152 ..........................................12

*Brause v. Goldman*, 199 N.Y.S.2d 606, affirmed, 210 N.Y.S.2d 225, 172 N.E.2d 78 (1961)...............8

*Burgess v. Rodom*, 121 Cal. App. 2d 71 (1953) ............................................7

*Carpenter v. Longan*, 83 U.S. 271, 274 (1872) ............................................4

*Cook v. Mielke*, 3 Cal. App. 2d 736 (1935) ................................................7

*Dillingham v. Dahlgren*, 52 Cal.App. 322, 326-327 (1921)..............................8

*Eronini v. JP Morgan Chase Bank, NA*, No. 08-55929, 2010 WL 737841 (9th Cir Mar.3, 2010) ......10

*Estes v. Hardesty*, 66 Cal. App. 2d 747 (1944).............................................7

*German Sav. & Loan Soc. v. McLellan*, 154 Cal. 710 (1908) ...........................7

*Gompper v. VISX, Inc.,* 298 F.3d 893, 895 (9th Cir. 2002) ..............................2

*Holland v. McCarthy*, 173 Cal. 597 (1916) .................................................7

*In re Foreclosure Cases*, 521 F.Supp.2d 650, 652 (S.D. Ohio, 2007)..................5

*In re Foreclosure Cases*, 521 F.Supp.2d 650, 653 (S.D. Ohio, 2007)..................4

*In re Hwang*, 396 B.R. 757 (Bankr.C.D.Cal. 2008) ......................................4

*In re Nosek*, 2008 WL 1899845 (Bkrtcy.D.Mass., Apr. 25, 2008)....................5

*Kelley v. Mortgage Elec. Reg. Sys., Inc.,* 2009 WL 2475703 at 7 (N.D.Cal., Aug.12, 2009)..............12

*Lonergan v. Scolnick*, 129 Cal. App. 2d 179 (1954)......................................7

*Morton v. Foss,* 48 Cal. App. 2d 117 (1941) ...............................................7

*North Star Int'l v. Arizona Corp. Comm'n,* 720 F.2d 578, 581 (9th Cir. 1983)........2

*Patterson v. Clifford F. Reid, Inc.*, 132 Cal. App. 454 (1933).............................7

*Salomon v. Cooper*, 98 Cal.App.2d 521, 522-523 (1950) ................................8

*Salomon v. Cooper*, id, 522-523 .............................................................12

*Saxon Mortgage v. Hillery*, Case No. C-08-4357 (N.D. Cal. 2008)....................4

*Scott v. Los Angeles Mountain Park Co.*, 92 Cal. App. 258 (1928) ....................7

*Ussery v. Jackson*, 78 Cal. App. 2d 355 (1947)............................................7

*Walleri v. Fed. Home Loan Bank of Seattle*, 83 F.3d 1575, 1580 (9th Cir. 1996) .................................. 2

*Watson v. MTC Financial, Inc.*, 2009 WL 2151782 (E.D.Cal., Jul. 17, 2009) ..................................... 13

*Weddington Productions, Inc. v. Flick*, 60 Cal.App.4th 793, 801 (1998) ................................................. 8

**Statutes**

Federal Rule of Civil Procedure 12(b)(6) ........................................................................................ 2

Federal Rules of Evidence § 201(b) .............................................................................................. 11

## MEMORANDUM OF POINTS AND AUTHORITIES

1. INTRODUCTION

This is a classic case of sleight of hand. Chase reaches out with the right hand to seize plaintiff's home while it points to WaMu with the left and says, "Sue WaMu for damages if you claim JPMorgan Chase has no beneficial interest in your property."

WaMu is making no effort to foreclose. Nor is FDIC. There are countless millions of entities that have shown no interest in taking plaintiff's property—only Chase seeks to sell her home. Is Chase suggesting that all of those nonparties be named and served? It's a trick. Chase wants to take real property it doesn't own because it's a bank that is currently negotiating a purchase agreement with FDIC.

Chase would not be burdened with entrenched customs such as recording transfers of interests in real property or joining the real party in interest. It seeks the court's approval to harvest other people's property without so much as a note scrawled on a napkin to support its claim. This case presents an unlawful seizure by a bank that asserts it owns everything WaMu ever owned. Or didn't own. Whatever. If WaMu had sold a desk and chair in 2006, could Chase now seize them from the purchaser and tell it to sue WaMu and FDIC to get their money back?

2. STATEMENT OF FACTS

No discovery has been taken. Chase holds all the cards. They have vast resources, including $2 trillion in assets, thousands of lawyers on their payroll, and privileged access to millions of documents that were in WaMu's possession when FDIC was appointed receiver of WaMu on September 25, 2008.

Only Chase knows whether plaintiff's loan was on the books as an asset of WaMu on 9/25/08. If not, Chase did not acquire any beneficial interest in Plaintiff's loan. Chase may or may not have a servicing obligation, and if so, only Chase knows if it forwarded payments of $107,766 from plaintiff to the beneficial owner of the loan. If

1 Chase was keeping the money, it has been unjustly enriched at plaintiff's expense. By
2 what providence does Chase assert the right to take the money without naming the
3 beneficiary or accounting for its disbursement?
4   Either WaMu did not form a contract with Plaintiff because WaMu intended that
5 Plaintiff would breach, or WaMu sold its beneficial interest in Plaintiff's property,
6 receiving many times the balance on Plaintiff's note, and retained merely a duty to
7 service the loan. Either way, Chase acquired no beneficial interest in Plaintiff's loan
8 and has no right to sell her property.

## 3. THE MATERIAL ALLEGATIONS IN THE COMPLAINT ARE SUFFICIENT

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the complaint's sufficiency. *North Star Int'l v. Arizona Corp. Comm'n,* 720 F.2d 578, 581 (9th Cir. 1983). All material allegations in the complaint, "even if doubtful in fact," are assumed to be true. The court must assume the truth of all factual allegations and must "construe them in a light most favorable to the nonmoving party." *Gompper v. VISX, Inc.,* 298 F.3d 893, 895 (9th Cir. 2002); *Walleri v. Fed. Home Loan Bank of Seattle*, 83 F.3d 1575, 1580 (9th Cir. 1996).

The Complaint alleges facts supporting Plaintiff's contention that Chase is not authorized to take her home, and CRC is under a duty to reconvey the Deed of Trust to Plaintiff.

## 4. NO CONTRACT WAS FORMED BETWEEN PLAINTIFF AND WAMU

Defendants argue that Chase assumed no *liability* for actions taken by WaMu prior to September 25, 2008 in regard to the subject loan. This misses the point. Plaintiff alleges that Chase acquired no *asset* that authorizes it to proceed with foreclosure of Plaintiff's property as a result of actions taken by WaMu prior to September 25, 2008. Plaintiff does not base her complaint on a liability of WaMu that might have been assumed by FDIC during the liquidation of WaMu and the (still pending) transfer of its

1  assets and liabilities to Chase. Plaintiff alleges that WaMu did not have any interest in
2  Plaintiff's residence on September 25, 2008 (Complaint ¶ 26). Her property was not an
3  asset of WaMu. WaMu did not hold any beneficial interest in Plaintiff's property, and
4  therefore Chase could not, did not, and will not acquire any interest in Plaintiff's
5  residence under the P&A Agreement. This is not a liability case.
6     If WaMu had owned an automobile and sold it in 2006, could Chase now impound
7  the car and tell the buyer to go after FDIC to recover the purchase price?
8     Does Chase assert that it can foreclose on any residence in the United States by
9  authority of the P&A Agreement on the grounds that WaMu might have had some
10 interest in the property at some time, even in the absence of a contract with the owner,
11 or even if WaMu had sold its interest in the loan several times to investors?
12    Plaintiff alleges in ¶ 19 of her Complaint that WaMu securitized plaintiff's single-
13 family residential mortgage loan through Washington Mutual Mortgage Securities
14 Corp., evidenced by Prospectus Supplement to Prospectus dated January 11, 2007,
15 WaMu Mortgage Pass-Through Certificates, Series 2007-OA1 Trust. If WaMu
16 retained no beneficial interest in the promissory note when it brokered the deal, Chase
17 cannot acquire what WaMu never had.
18    If WaMu transferred all of its beneficial interest in the note at the inception of the
19 loan and never entered it in its books as an asset, and entered no corresponding reserve
20 on its ledger as a liability in the event of Plaintiff's default, then Chase could not
21 acquire ownership of the note by purchasing WaMu's assets because WaMu had
22 nothing to sell. Plaintiff alleges in ¶ 30 of the Complaint that Chase does not have
23 standing to sell plaintiff's property because Chase is not the holder of the Note and
24 Chase did not pay any consideration to plaintiff. Plaintiff alleges in ¶ 44 that Chase is
25 not the holder of the Promissory Note and cannot prove that it has any interest in the
26 Note, or that the Note is secured by the Deed of Trust. Chase does not own the loan
27 and cannot identify the owner of the loan. Chase did not purchase the loan for value
28 when it took over WaMu in September 2008.  Chase has no beneficial interest in the

note and can only proceed if it proves that it is the servicer and joins the owner of the note in this action. To dismiss this lawsuit before ascertaining the truth of these allegations would be unjust. Chase could produce the evidence in its files, but it prefers that Plaintiff be denied her day in court.

In *Saxon Mortgage v. Hillery*, Case No. C-08-4357 (N.D. Cal. 2008), the court ruled that the foreclosing party, Consumer, must demonstrate that it is the holder of the deed of trust and the promissory note. The *Saxon* court cited *In re Foreclosure Cases*, 521 F.Supp.2d 650, 653 (S.D. Ohio, 2007), which held that to show standing in a foreclosure action, the plaintiff must show that it is the holder of the note and the mortgage at the time the complaint was filed.

For there to be a valid assignment, there must be more than just assignment of the deed alone; the note must also be assigned.  "The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity." *Carpenter v. Longan*, 83 U.S. 271, 274 (1872). Precedent is the rudder of our legal system.

A loan servicer cannot bring an action without the holder of the note. Only the person who is the holder of a note has standing to enforce the note. A servicer cannot foreclose upon a mortgage because it lacks standing and a servicer is not a real party in interest. Judge Buford's conclusion *In re Hwang*, 396 B.R. 757 (Bankr.C.D.Cal. 2008):

> IndyMac gives no explanation for its failure to join the owner of the note in this motion. The likely reason is that IndyMac does not know who the owner is, and thus cannot have any authority to join the owner voluntarily. If IndyMac were the duly authorized loan servicer for the owner, the servicing agreement would presumably authorize IndyMac to join the owner of the note in this motion, and the problem would disappear. If the servicing agreement did not grant this authority, IndyMac should have obtained authority from the owner to join the owner as a movant in this case.
>
> Consequently, if a loan servicer wishes to seek relief from the automatic

stay, either as agent or nominee of the noteholder, the servicer may do so only if the noteholder either joins or ratifies the motion. Absent joinder or ratification, the noteholder must substitute into the servicer's place, and prosecute the motion on its own. See Fed.R.Civ.P. 17(a)(3). *In re Hwang*, 396 B.R. at 772.

In *In re Nosek*, 2008 WL 1899845 (Bkrtcy.D.Mass. 2008), the court awarded Rule 9011 sanctions against a lender for falsely representing that it was holder of the note and mortgage, when the lender had sold the note and mortgage five days after closing.

*In re Foreclosure Cases* involved 27 foreclosure actions filed in the Southern District of Ohio, in which the court questioned whether the plaintiff lenders had standing when the foreclosure complaint was filed and whether the court had subject matter jurisdiction to hear the cases at the time the foreclosure complaint was filed. Judge Thomas M. Rose wrote, [This Court] "will not tolerate a lender's or servicer's disregard for the rules that govern litigation, including contested matters, in the federal courts. It is the creditor's responsibility to keep a borrower and the Court informed as to who owns the note and mortgage and is servicing the loan, not the borrower's or the Court's responsibility to ferret out the truth." *In re Foreclosure Cases*, 521 F.Supp.2d 650, 652 (S.D. Ohio, 2007).

If you keep selling the same car over and over, you may go to jail, but the third or fourth purchaser of the car cannot sue the first purchaser for possession. They bought nothing but a claim for fraud against the seller. If WaMu transferred its beneficial interest in Plaintiff's loan through a Pooling and Service Agreement, Chase cannot foreclose against Plaintiff without joining the Real Party in Interest and showing that it is acting with that party's knowledge and blessing. It's common sense, especially when so many millions of America families are losing their homes to so many banks that put up no money to fund the loan and cannot even guess who is entitled to the proceeds.

5. INTENDING THAT THE OTHER PARTY WILL FAIL VOIDS A CONTRACT

Some recent decisions have suggested that lenders do not have a duty to ascertain

1 the ability of borrowers to repay home loans. As a consequence, the widespread failure
2 of lenders to follow traditional underwriting practices during the past decade, driven by
3 an insatiable appetite for short-term profits in disregard for the resulting collapse in the
4 global economy, has received the approval of some courts, but not others, in the early
5 rounds of the foreclosure debacle. If lenders have no duty to weigh the likelihood that
6 borrowers can demonstrate even a remote ability to repay bank loans, then our time-
7 tested system governing transfers of interest in real estate is collapsing in a great cloud
8 of dust with only the flimsiest of excuses—the infallibility of banks too big to fail.

9     Evaporation of the duty of the lender to follow commonly accepted underwriting
10 practices does not settle an even more troubling issue raised by the current economic
11 crisis. It was not just that banks didn't care if the homeowners could pay back their
12 loans that crippled our economy. It was that they made so many loans knowing that the
13 unsophisticated borrowers could never possibly pay them back—that's how the law of
14 contract came tumbling down. If one party enters into an agreement knowing full well
15 that the other party will default, there is no contract. It doesn't get to duty or liability.
16 There is no contract, no shared expectation, no meeting of the minds.

17     They made loans to dead guys. They made home loans for empty lots without ever
18 looking at the property. They fired loan officers who asked questions, such as, how can
19 a short-order cook making $16,000 a year pay for a $800,000 home? They made up
20 numbers and typed them on loan applications for borrowers to sign without giving
21 them an opportunity to read the application. Twenty-something year-old MBAs on
22 Wall Street referred to these "products" as "toxic assets" as they rated them triple-A
23 and sold them to unsuspecting investors. It was unprecedented. Congress did not
24 foresee it, so there were no statutes regulating this unruly behavior and there was no
25 legal precedent. The courts have nowhere to turn but Common Law principles.

26     Income figures were written on Plaintiff's loan application without her knowledge
27 after she signed the papers. The notary came to her home at 8:00 PM on a winter
28 solstice to get her signature on the final documents—at home, alone, at night, four days

after the sudden, unexpected death of her mother. (See Declaration of Margaret Carswell, page 2, filed July 13, 2010).

Meeting of the minds is a necessary element in the formation of a contract, a notion that dates back to the origins of contract law. Consent of the parties is one of the requisites of a valid contract for the sale of realty. *Ussery v. Jackson*, 78 Cal. App. 2d 355 (1947). It is essential to the creation of such a contract that there be a meeting of the minds of the parties and a mutual agreement on the terms of the contract. *Holland v. McCarthy*, 173 Cal. 597 (1916); *German Sav. & Loan Soc. v. McLellan*, 154 Cal. 710 (1908); *Lonergan v. Scolnick*, 129 Cal. App. 2d 179 (1954); *Cook v. Mielke*, 3 Cal. App. 2d 736 (1935).

The writing must evince a free and mutual understanding of the parties and show that they both agreed on the same thing in the same sense, *Estes v. Hardesty*, 66 Cal. App. 2d 747 (1944), or the writing has no binding effect on either. *Patterson v. Clifford F. Reid, Inc.*, 132 Cal. App. 454 (1933); *Scott v. Los Angeles Mountain Park Co.*, 92 Cal. App. 258 (1928). When the writing shows that there was no meeting of the minds on the material terms of the proposed agreement, no contract exists, no obligation to convey rests on the vendor, and the purchaser is under no duty to accept the property or pay for it. *Burgess v. Rodom*, 121 Cal. App. 2d 71 (1953); *Salomon v. Cooper*, 98 Cal. App. 2d 521 (1950). In such a case it is immaterial that the signature of the party charged, *Patterson v. Clifford F. Reid, Inc.,* 132 Cal. App. 454 (1933), or of both parties, is affixed. *Morton v. Foss,* 48 Cal. App. 2d 117 (1941).

It is indispensable to a valid memorandum of an agreement to sell and convey land that it be complete evidence of the terms to which the parties have assented. If it establishes that there was in fact no contract, if it discloses that upon essential and material terms the minds of the parties did not meet and that such terms were left open for future settlement, then there is no binding obligation upon the seller to convey or the buyer to accept and pay for the land. It will be regarded as merely an inchoate effort. Implications will not be indulged. *Salomon v. Cooper*, 98 Cal.App.2d 521, 522-

523 (1950).

An action for damages for breach of contract for the purchase or sale of real property will not lie unless the writing contains the essential terms and material elements of such an agreement without recourse to parole evidence of the intention of the contracting parties. *Dillingham v. Dahlgren*, 52 Cal.App. 322, 326-327 (1921). The law does not provide a remedy for breach of an agreement to agree in the future, and the court may not speculate upon what the parties will agree. *Autry v. Republic Productions, Inc.,* 30 Cal.2d 144, 151, 152 (1947).

"Plaintiff's evidence does not establish the indispensable 'meeting of the minds' regarding the material terms of this transaction and, therefore, the existence of an enforceable contract." *Martin Deli v. Schumacher*, 52 N.Y.2d 105, 109, 436 N.Y.S.2d 247, 417 N.E.2d 541 (1981).

"If no meeting of the minds has occurred on the material terms of a contract, basic contract law provides that no contract formation has occurred. If no contract formation has occurred, there is no settlement agreement to enforce pursuant to (C.C.P.) section 664.6 or otherwise." *Weddington Productions, Inc. v. Flick*, 60 Cal.App.4th 793, 801 (1998).

David Horton wrote in the UCLA Law Review this year, "The perception that adherents (to standard form contracts) did not read and could not understand fine-print terms made it difficult to identify the requisite 'meeting of the minds' or 'mutual assent' of contract formation." David Horton, "The Shadow Terms: Contract Procedure and Unilateral Amendments," 57 UCLA Law Review 605 (February, 2010).

William R. Hubbard wrote in 2009, "Contracts enjoy substantial communication advantages over patents. One advantage with contracts is that the parties to a contract dispute are typically the same parties involved in the contract's formation. For example, the core of a contract is the parties' *meeting of the minds*, which both parties will want to memorialize clearly. If a dispute arises regarding the meaning of a contract term, both parties can provide evidence regarding the *meeting of the minds*.

"Efficient Definition and Communication of Patent Rights: the Importance of Ex Post, Santa Clara Computer and High Technology Law Journal (January, 2009).

6. FEDERAL COURT IS THE PROPER FORUM FOR THIS CONTROVERSY

In Santa Barbara County, the Grantor-Grantee Index[1] lists 10,000 Notices of Default recorded between January 1, 2007 and August 17, 2010, and over 75% resulted in a Notice of Trustee's Sale. With a population of 400,000 it shows that one in ten residents have faced foreclosure since this crisis began. In the preceding 3 1/2 years, 2,816 Notices of Default were recorded, resulting in 1,130 Notices of Trustee's Sale. The number of Notices of Trustee's Sale recorded in Santa Barbara County in the past 12 months is 2,460. There were 116 recorded during a comparable period in 2005—so there was a 21-fold increase in Trustee's Sales in four years. Nationally, RealtyTrac reports 2 million foreclosure listings currently.[2] Over 6 million people now expect to be escorted from their homes by a Sheriff. The Center for Responsible Lending reports 6.6 million foreclosures since 2007. It forecasts up to 12 million more foreclosures during the next five years.[3]

Foreclosure fraud is plaguing our country. Million of homes have already been taken from their owners. These people are angry and many are homeless, leading to unprecedented destabilization of our civil society.

No one should be compelled to pay money to a party to whom the money is not owed. During the past year Plaintiff has requested documents from Chase many times, both directly and through a Qualified Written Request under RESPA. Chase has refused to produce any relevant material. Plaintiff cannot ascertain the facts to prove

---

[1] http://www.sbcvote.com/clerkrecorder/GrantorGranteeIndex.aspx

[2] http://www.realtytrac.com/trendcenter

[3] http://www.responsiblelending.org/mortgage-lending/research-analysis/snapshot-of-a-foreclosure-crisis.html

1 her case if Chase refuses to respond with information in its possession.

2

3 7. DEFENDANTS' RESPA VIOLATIONS CONCEAL MATERIAL FACTS

4     Chase cites *Eronini v. JP Morgan Chase Bank, NA*, No. 08-55929, 2010 WL
5 737841 (9th Cir Mar.3, 2010) in support of its assertion that Plaintiff must allege
6 damages to support of a RESPA claim. The 9th Circuit court stated in *Enronini*, "This
7 disposition is not appropriate for publication and is not precedent."

8     Chase's assertion that damages must be asserted to state a cause of action for
9 violation of a statutory requirement to furnish information, where the bank has refused
10 to provide information requested in a Qualified Written Request, is like insisting that a
11 party pursuing discovery specify its damages when seeking a discovery order after
12 interrogatories have been ignored. Such a rule would invite mayhem. How does a party
13 with dramatically inferior access to information prove damages when a party with $2
14 trillion dollars in assets and thousands of lawyers under contract ignores a QWR and
15 refuses to respond to discovery?

16     A copy of plaintiff's QWR dated April 30, 2010, is attached to the Complaint as
17 Exhibit 5 filed on July 13, 2010.

18

19 8. DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IS PREMATURE

20     On the first page of Defendants' Exhibit 2, the Office of Thrift Supervision states
21 that WaMu reported total assets of $307 billion as of June 30, 2008. Defendants'
22 Memorandum of Points and Authorities alleges on page 2:4-7 that Chase acquired
23 certain assets and liabilities of WaMu from the FDIC pursuant to a Purchase and
24 Assumption Agreement dated September 25, 2008, for $1.9 billion—1/2 cent on the
25 dollar.

26     Defendants move the court to take judicial notice of the 39-page P&A Agreement.
27 The url cited, http://www.fdic.gov/about/freedom/Washington_Mutual_P_and_A.pdf,
28 for reviewing the agreement does not work, and the half-cent sale of Washington

1. Mutual to JPMorgan Chase is still pending two years after the initial agreement was
2. signed, due to extensions to the closing deadline ordered by the Federal Deposit
3. Insurance Corp. Attached is **Plaintiff's Exhibit 7**, an Amendment to the Purchase and
4. Assumption Agreement extending the Settlement Date to August 31, 2010—three
5. weeks after defendants filed their request for judicial notice.
6. Requests for judicial notice are governed by Federal Rules of Evidence § 201(b),
7. which provides:
8. A judicially noticed fact must be one not subject to reasonable dispute in that it is
9. either (1) generally known within the territorial jurisdiction of the trial court or (2)
10. capable of accurate and ready determination by resort to sources whose accuracy
11. cannot reasonably be questioned. Courts may take judicial notice of matters of public
12. record on a motion to dismiss, but not where the terms are the subject of litigation
13. The terms of the sale remain hotly debated. Attached is **Plaintiff's Exhibit 8**, the
14. Examiner's Preliminary Report filed September 7, 2010 in the Washington Mutual
15. Chapter 11 bankruptcy, Case No 098-12229 (Delaware). The report shows that
16. contested issues relating to Chase's pending acquisition of WaMu are extensive.

18. ¶ 33. The JPMC Team is investigating whether, in a legally cognizable way,
19. JPMC by itself of in conjunction with government regulators, intentionally
20. injured WMI in connection with the seizure of WMB and sale to JPMC for
21. approximately $1.9 billion. The team is also investigating whether JPMC
22. improperly interfered with, or prevented, third parties from purchasing WMI or
23. WMI.
24. ¶ 34. The JPMC Team is investigating allegations that JPMC may have
25. intentionally breached its March 11, 2008 confidentiality agreement with WMI in
26. an attempt to depress WMB's market value and purchase the bank at a reduced
27. price. This claim has been asserted in a lawsuit styled *American National*
28. *Insurance Co. v. JPMC*, No. 09-01743 (D.D.C.)…Plaintiffs further alleged that

1   JPMC breached the Confidentiality Agreement by leaking WMI's confidential
2   information to the media, government regulators, and investors, causing OTS to
3   seize WMB and forcing WMI into bankruptcy.
4   ¶ 53. Specifically, it is alleged that one or both of the following occurred: (1)
5   the FDIC established bidding parameters intentionally designed to guarantee that
6   JPMC tendered the winning bid for the purchase of WMB; and (2) the FDIC
7   favored or colluded with JPMC in order to ensure that JPMC tendered the
8   winning bid for purchase of WMB to improperly provide extraordinary benefits
9   to JPMC.

Defendants invite the court to take judicial notice of a contested proposed P&A Agreement in which both parties have been sued for fraud, collision, interference with contract, and are under continuing investigation by a court appointed Investigator in WaMu's Chapter 11 bankruptcy. If the evidence establishes that essential and material terms are left open for future settlement, then there can be no binding obligation. It is merely an inchoate effort. Implications will not be indulged. *Salomon v. Cooper*, id, 522-523 (1950). The court may not speculate upon what the parties will agree. *Autry v. Republic Productions, Inc.*, id, 151, 152 (1947). Judicial notice would be unfounded.

Plaintiff objects to Defendants' request for judicial notice of the pending Purchase and Assumption Agreement on the grounds that the terms of the agreement are still being negotiated and are subject to reasonable dispute as raised in pending lawsuits.

9. QUIET TITLE DOES NOT REQUIRE FULL TENDER TO TRESPASSERS

A basic requirement of an action to quiet title is an allegation that plaintiffs `are the rightful owners of the property, i.e., that they have satisfied their obligations under the Deed of Trust.' *Kelley v. Mortgage Elec. Reg. Sys., Inc.,* 2009 WL 2475703 at 7 (N.D.Cal., Aug.12, 2009). `[A] mortgagor cannot quiet his title against the mortgagee without paying the debt secured.' *Watson v. MTC Financial, Inc*., 2009 WL 2151782

(E.D.Cal., Jul. 17, 2009), quoting Shimpones v. Stickney, 219 Cal. 637, 649 (1934).

The core issue in this case is to ascertain who is the mortgagee. Plaintiff did not borrow money from Chase. Plaintiff's pre-discovery inquiries indicate that WaMu did not own the loan and therefore Chase cannot be the mortgagee. This fundamental issue cannot be brushed aside on the pretense that California is a non-judicial state. Non-judicial does not mean *outlaw*. If Chase is not the mortgagee, it would be unjust to dismiss the complaint and allow Chase to seize Plaintiff's home. She has a grant deed (**Plaintiff's Exhibit 9**). What does Chase have? A bitterly contested Purchase and Assumption Agreement that generates millions of dollars in lawyers fees per month.

Plaintiff acknowledges that she received the funds. She is ready, willing and able to resume monthly payments to the real party in interest—the owner of the note.

Is Chase legally entitled to repayment of these funds from Plaintiff? Chase must produce the original promissory note and show that Chase is the beneficiary of the note. Having researched this issue for almost a year, Plaintiff is informed and believes that Chase cannot produce the necessary instruments. She will show at trial that the promissory note was bundled into a presold "Trust" which was then securitized and offered for investment many times over on Wall Street, and that the note was also securitized and marketed through another company which will be named at trial. In other words, the note was "atomized" and no longer exists as an enforceable mortgage document.

Chase can only have acquired from WaMu assets that were owned by WaMu. Plaintiff asserts on information and belief that the funds received by Plaintiff were not recorded in the accounting ledgers of WaMu. She further asserts that Chase is unable to produce any proof that these funds were properly accounted for in WaMu's ledger. Chase does not have any legal right to demand payment or sell the property for failure to pay.

The fact that Chase has not produced the note indicates its inability to perform. Chase states that it "has a duty, as the Subject Loan's servicer, to protect and preserve

all rights now existing under the Subject Loan's Deed of Trust." (Memo P&A 10:17-18). Plaintiff is informed and believes that Chase does not know for whom it might be servicing the "Subject Loan" and it cannot identify this party.

Defendant quotes *Nool v. Homeq Serving*, "The cloud upon his title persists until the debt is paid." But the question is, paid to whom? Plaintiff didn't borrow money from Chase. If Plaintiff could identity the owner of the note, she would pay the mortgagee until the debt was paid and then the Deed of Trust would be reconveyed to her. She requests that her title be quieted because the purported debt has been spread over a multitude of unidentifiable investors unknowingly involved in her mortgage during that chaotic decade when the system was broken by the banks.

10. CRC CANNOT BE REPRESENTED BY ONE OF ITS TWO PRINCIPALS

The Deed of Trust names Plaintiff as Trustor as well as borrower. WaMu, who did not sign the copy of the Deed of Trust that Plaintiff obtained from the Santa Barbara County Recorder's Office, is named as beneficiary. Defendant California Reconveyance Company is named the Trustee. Page 3 of this document states: "Borrower irrevocably grants and conveys to trustee, in trust, with power of sale, the following described property"…

Trustor relinquished control over her property to California Reconveyance Co., a third party trustee unknown to her. Under the terms of an irrevocable trust, the trustee has a duty to both parties to protect the trustor's interests as well as those of the beneficiary. The trustee must remain at arm's length from both parties in order to properly perform those duties. The attorneys for the defendants represent both the trustee under the deed of trust and Chase. This raises a conflict of interest. Plaintiff has repeatedly requested, in correspondence and in her QWR under RESPA, that Chase and CRC disclose their legal and business relationship. Each refused to do so. Plaintiff is informed and believes that Chase and CRC are not performing their duties at arm's length, and that Chase is the owner or is in control of CRC. In accepting legal

representation by counsel for Chase, CRC has breached its duty to remain neutral. "As a common agent, the trustee must represent the interests of both parties." Miller & Starr, *California Real Estate*, §10:4, Capacity and Authority of Trustee.

## 11. PLAINTIFF REQUESTS A TRO AND PRELIMINARY INJUNCTION

A Trustee's Sale of Plaintiff's home is scheduled for September 27, 2010. Plaintiff requests a Temporary Restraining Order and Preliminary Injunction restraining defendants from conducting a Trustee's Sale of the Property during the pendency of this action.

## 12. CONCLUSION

It is not necessary that the court rule on these allegations in favor of Plaintiff at this early stage in the proceedings. However, it is necessary to construe them in the most favorable light. Defendants hold all the cards, and they ask the court to call the game before they show their hand.

If any claims are insufficiently plead, Plaintiff requests leave to amend.

Date: September 9, 2010                          /s/_____
                                                  Douglas Gillies
                                                  Attorney for Plaintiff
                                                  3756 Torino Drive,
                                                  Santa Barbara, CA 931056
                                                  douglasgillies@gmail.com
                                                  (805) 682-7033